IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBER D.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:22-CV-01933-HZ

OPINION & ORDER

Alan Stuart Graf
Alan Graf, Attorney at Law
825 Merrimon Ave, Ste C
PMB # 354
Asheville, NC 28804

    Attorney for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Kevin C. Danielson
US Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

L. Jamala Edwards
Social Security Administration
Office of the General Counsel
6401 Security Blvd.
Baltimore, MD 21235

Megan Cleary DePonte
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Kimber D. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

     Plaintiff applied for SSI on January 31, 2019, alleging an onset date of January 9, 2019. Tr. 271.[2] Her application was denied initially and on reconsideration. Tr. 90, 107. On January 28, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 34-60. On February 16, 2021, the ALJ found Plaintiff not disabled. Tr. 122. The Appeals Council granted review and remanded the case to the ALJ for further proceedings. Tr. 128-132.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

2 – OPINION & ORDER

On February 17, 2022, Plaintiff appeared with counsel for a second hearing before the ALJ on remand. Tr. 61-78. On April 6, 2022, the ALJ again found Plaintiff not disabled. Tr. 24. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on back injury, arthritis, fibromyalgia, migraines, depression, anxiety, joint pain, carpal tunnel, racing heart, and nerve pain. Tr. 296. At the time of her alleged onset date, she was 37 years old. Tr. 23. She has a twelfth-grade education and no past relevant work experience. Tr. 22.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

3 – OPINION & ORDER

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "lumbar degenerative disc disease with left lower extremity radiculopathy, status-post L5 laminectomy in 2004 as well as a laminectomy and discectomy at the L4-L5 level in April 2019 with residual radiculopathy; mild to moderate degenerative disc disease of the cervical and thoracic spine, obesity, and anxiety disorder." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. At step four, the ALJ concluded that Plaintiff has the

residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> Is able to stand and/or walk only two hours and would be able to sit for six hours in an eight-hour workday with occasional climbing, frequent balancing, and occasional stooping, kneeling, crouching, and crawling. The claimant can persist at semiskilled work with minimal supervision and can have routine but superficial contact with the general public, coworkers, and supervisors. In other words, interpersonal contact needs to be routine and superficial.

Tr. 18. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "routing clerk," "production assembler," and "assembler, electrical accessories." Tr. 23. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 24.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

5 – OPINION & ORDER

**DISCUSSION**

Defendant concedes that the ALJ's decision contains errors and that remand is therefore appropriate. The parties disagree over whether the case should be remanded for further proceedings or for immediate payment of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d 995, 1020 (9th Cir. 2014). Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, the Court evaluates whether, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule"). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

I.  **ALJ Error**

To satisfy the first prong of the remand analysis, the ALJ must have failed to provide legally sufficient reasons for rejecting evidence. *Garrison*, 759 F.3d at 1020. Plaintiff alleges that the ALJ erred by (1) failing to consider fibromyalgia as an impairment when fashioning the RFC; (2) failing to provide legally sufficient reasons for rejecting Plaintiff's mother's lay

testimony; (3) failing to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating source Dr. Sunny; (4) failing to address Dr. Davenport and Dr. Norcross's opinions that Plaintiff was limited to a sedentary RFC; and (5) failing to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Defendant concedes that the ALJ committed harmful error warranting remand for further proceedings with respect to the ALJ's failure to evaluate fibromyalgia in making the RFC finding and in failing to consider the lay opinion testimony of Plaintiff's mother regarding her limitations (*i.e.,* points 1 and 2 above). As for the remaining errors alleged by Plaintiff, Defendant argues that such errors were harmless or that there were no errors at all. Although the first prong of the remand analysis is satisfied by the existence of admitted error, the Court still begins by evaluating Plaintiff's assignments of error related to the ALJ's discrediting of Dr. Sunny's medical opinion and Plaintiff's subjective symptom testimony (*i.e.*, points 3 and 5 above) because they are relevant to the later prongs of the remand analysis.[3]

    A.    **Medical Opinion Evidence**

For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The

---

[3] Although Plaintiff also alleges that the ALJ erred in crediting Dr. Norcross and Dr. Davenport's opinion, the Court does not directly address that point as it does not involve *discredited* evidence relevant to the Court's "credit-as-true" analysis.

7 – OPINION & ORDER

"most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ must explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi,* 32 F.4th 785, 792 (9th Cir. 2022).

Dr. Christy Sunny treated Plaintiff since December 2020, and saw her every 2-6 months. Tr. 1666. Plaintiff had been treated by other providers at the same clinic for "years" before her first visit with Dr. Sunny. Tr. 68; *see also* Tr. 46 ("Aviva Health" was formerly known as "Umpqua Health"). Dr. Sunny's treating source statement indicates diagnoses of "chronic back pain," "fibromyalgia," and "neuropathy." Tr. 1666. Plaintiff's symptoms were "body wide pain, tingling, weakness, fatigue, [and] anxiety." Tr. 1667. Dr. Sunny opined that Plaintiff would need to lie down or rest for 20-30 minutes after standing longer than 20 minutes due to body pain. *Id*. She would need 20-minute breaks every hour. Tr. 1669. She could lift less than 10 pounds occasionally, but never lift more than that. *Id*. She would be absent from work due to her medical condition more than four days per month. Tr. 1670.

The ALJ found that Dr. Sunny's opinion was "not persuasive." Tr. 22. Plaintiff contends that the ALJ's consideration of Dr. Sunny's opinion was error. Defendant does not concede any error with respect to the ALJ's treatment of Dr. Sunny's opinion, arguing that the ALJ appropriately considered the required "supportability" and "consistency" factors. Defendant argues that the ALJ appropriately addressed supportability by explaining:

> This provider began seeing the claimant long after the amended alleged onset date, and only sees the claimant every 2-6 months. Treatment notes from this provider are minimal, and this statement was based upon a telephone appointment where the claimant requested a statement and self-reported her diagnoses.

Tr. 22.

The amount of treatment notes and the reliance on self-reports are both relevant to the "supportability" analysis,[4] but the ALJ's findings on these points are not supported by substantial evidence. First, regarding the "minimal" treatment records, the ALJ ignores the fact Plaintiff had treated with other doctors at the same clinic for "years" before switching doctors to Dr. Sunny. Tr. 68. Dr. Sunny's opinion was rendered with the benefit of access to Plaintiff's medical history and was not simply based off her individual treatment of Plaintiff since December 2020 or Plaintiff's self-reported diagnosis during a telephone appointment. The record confirms that Dr. Sunny had reviewed Plaintiff's medical history. Tr. 1407-1412; 1671-1674. That medical history included a fibromyalgia diagnosis from the clinic at which Dr. Sunny treated Plaintiff. *See, e.g.*, Tr. 617. As to Dr. Sunny's reliance on Plaintiff's self-reports rather than objective medical

---

[4] The ALJ's discussion of the length of time and frequency with which Dr. Sunny saw Plaintiff are relevant to the ALJ's assessment of Dr. Sunny's medical opinion, but they are not part of the "supportability" analysis, but instead "relationship with the claimant." 20 C.F.R. § 416.920c(c)(3). "A discussion of relationship factors may be appropriate when 'two or more medical opinions ... about the same issue are ... equally well-supported ... and consistent with the record ... but are not exactly the same.'" *Woods*, 32 F.4th at 792. The Court does not address the ALJ's treatment of relationship factors here because the Court finds that the ALJ's conclusions relating to the supportability and consistency factors are unsupported by substantial evidence.

9 – OPINION & ORDER

evidence, that is not a basis to reject a medical opinion relating to fibromyalgia because such diagnosis depends "entirely on the basis of the patients' reports of pain and other symptoms…there are no laboratory tests to confirm the diagnosis." *See Revels v. Berryhill,* 874 F.3d 648, 656 (9th Cir. 2017) (internal quotation and brackets omitted).

Addressing consistency, the ALJ's conclusion is also unsupported by substantial evidence. The ALJ found Dr. Sunny's opinion inconsistent with (1) Plaintiff's ability to "engage in daily activities such as cooking and cleaning, as well as social gatherings and family events"; and (2) normal musculoskeletal findings. Tr. 22. The ALJ fails to explain how Plaintiff's reported daily activities are inconsistent with Dr. Sunny's opinion, instead cherry-picking from the record to note generally that Plaintiff's ability "to engage in daily activities such as cooking and cleaning, as well as social gatherings and family events" was inconsistent with Dr. Sunny's opinion. Tr. 22. Plaintiff reported that she takes her son to school and takes care of her four-year-old child, but "limits [her]self on household chores" and must "sit or lay on couch." Tr. 353. She feeds her children, reads to them, and assists with bathing them." Tr. 354. Her ability to cook depends on her pain level, and meals are usually quick and easy. Tr. 355. She must sit down and take breaks while cooking. *Id*. She can sometimes do basic household chores but sometimes must hire help depending on the severity of her pain. Tr. 355-356. She visits her sister and spends time with her mother almost daily. Tr. 357. The ALJ failed to acknowledge the intermittent and limited nature of Plaintiff's ability to engage in daily activities or explain the lack of consistency with Dr. Sunny's opinion.

Medical records on the issue of her daily activities support Plaintiff's testimony. While medical records indicate that Plaintiff sometimes reported the ability to perform common household tasks and participate in family or social events, *see* Tr. 1579 (August 2021); 1590

(June 2021); 1626 (February 2021), other records indicate she sometimes was not able. *See* Tr. 1614 (March 2021); 1652 (October 2021). The Commissioner has recognized that waxing and waning symptoms are typical of fibromyalgia, and Plaintiff's sporadic ability to engage in household chores and participate in social events does not provide a basis to invalidate Dr. Sunny's opinion. *See Soc. Sec. Ruling, Ssr 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P, 2012 WL 3104869, at *6 (S.S.A. July 25, 2012) ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"). This is particularly true here, where the records at issue do not provide any detail on the frequency and type of chores and social activities Plaintiff is sometimes able to engage in. Plaintiff herself testified that even when she can perform some chores, she must take breaks in order to do so. That is not inconsistent with Dr. Sunny's opinions on Plaintiff's limitations.

The ALJ's conclusion that Dr. Sunny's opinion is inconsistent with Plaintiff's normal musculoskeletal findings is likewise unsupported by substantial evidence. The Ninth Circuit has emphasized that fibromyalgia is an unusual disease. *Revels,* 874 F.3d at 656 ("What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes [that] are normal.") (internal quotations omitted). Musculoskeletal examination may appear normal. *Id*. An ALJ errs when they discount medical opinions related to a fibromyalgia diagnosis based on a lack of objective medical evidence. *Id*. at 662. Accordingly, the ALJ's conclusions as to inconsistency are not supported by substantial evidence.

      **B.**     **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

11 – OPINION & ORDER

evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of [their] residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff reported that she has suffered from chronic pain since she was struck by a car as a pedestrian in 2004 or 2005. Tr. 43, 360. She had emergency surgery which has left her with "complications on top of already having back pain and widespread pain from fibromyalgia." Tr. 360. She had another surgery in 2019. Tr. 47. She describes "a constant back pain" "back spasms," and pain and weakness in her lower left leg. Tr. 47-48. When doing dishes, cooking, and folding laundry, she often needs to lay down and take a break. Tr. 51-52. She estimates that

she spends at least an hour or two laying down throughout the day because of pain. Tr. 52. Plaintiff's function reports describe that she is in "constant pain." Tr. 353. While she reports that she is able to engage in some activities of daily living, almost all answers are qualified by statements such as "depends on pain level," "depends on severity of pain," and "sometimes." Tr. 353-56, 332-34.

The ALJ found that Plaintiff's subjective symptom testimony was not supported by the medical record and was inconsistent with her ability to engage in normal activities of daily living. Tr. 18-20. Defendant concedes that the ALJ erred by essentially skipping the first step in the required analysis for evaluating Plaintiff's subjective symptom testimony. However, Defendant argues that any error was harmless because the ALJ *did* properly apply the second step of the analysis. Because the second step is required only if the ALJ finds evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged (*i.e.*, the first step), Defendant argues that the ALJ implicitly made such a finding.

Even if the Court were to accept Defendant's argument—a question the Court does not reach—the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's testimony on the severity of her symptoms. The ALJ rejected Plaintiff's testimony based on (1) normal objective testing in the medical record, and (2) Plaintiff's ability to engage in some activities of daily living.

First, an ALJ may consider objective medical evidence in evaluating a plaintiff's subjective symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) ("While subjective pain testimony cannot be

13 – OPINION & ORDER

rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects") (internal quotation and brackets omitted). Here, the Court has already explained that normal objective medical testing is not a valid reason to reject a claimant's testimony on fibromyalgia-related symptoms. *See supra* I.A.; *see also Revels*, 874 F.3d at 656 (noting that those suffering from fibromyalgia have "muscle strength, sensory functions, and reflexes that are normal"). The ALJ therefore erred in relying on normal objective testing as inconsistent with Plaintiff's subjective symptom testimony.

Second, with respect to Plaintiff's reported activities of daily living, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). " "Occasional symptom-free periods—and even the sporadic ability to work— are not inconsistent with disability." *Id*. at 724 (internal quotations and brackets omitted). In order to impact a claimant's credibility, the activity must be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach her conclusion on the claimant's credibility. *Id.* at 722-23.

As already explored in the context of the ALJ's rejection of Dr. Sunny's medical opinion, the ALJ's selective citation to Plaintiff's ability to engage in certain daily activities ignores Plaintiff's repeated statements that her abilities depend on how she is feeling that day. For the

same reason, the ALJ's conclusion that Plaintiff's daily activities are inconsistent with her subjective symptom testimony is not supported by substantial evidence.

## II. Record

Next, the Court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103–04.

Defendant argues that the record has not been fully and properly developed because it is not clear regarding Plaintiff's fibromyalgia limitations. The Court disagrees. Plaintiff's fibromyalgia diagnosis is well documented in her medical records. Although Drs. Norcross and Davenport did not consider what limitations Plaintiff may have as a result of fibromyalgia,[5] there is already a medical opinion in the record from Plaintiff's treating provider Dr. Sunny on the issue of Plaintiff's fibromyalgia-related limitations. Defendant argues that remand is appropriate because Dr. Sunny's treatment notes are sparse and in conflict with other evidence in the record. Def. Resp. 6-7, citing *Dominguez v. Colvin*, 808 F.3d 403, 408–09 (9th Cir. 2015). For the reasons already discussed, citations to portions of the record in which Plaintiff indicated occasional ability to engage in various tasks to a limited extent, or which show normal objective testing, do not create ambiguity in the context of a fibromyalgia diagnosis or a conflict between Dr. Sunny's opinion and the record.

Likewise, the extent of Plaintiff's chronic pain and resulting limitations are well documented in the record. While Plaintiff's testimony, her mother's testimony, and her medical history all suggest that the extent of her pain and limitations fluctuate, that is typical of

---

[5] These doctors' opinions did not include fibromyalgia as among the medically determinable impairments considered. *See* Tr. 86, 100.

15 – OPINION & ORDER

fibromyalgia and not a reason to find ambiguities in the record. In sum, the Court finds that the record is fully and properly developed, and remanding for further proceedings would serve no useful purpose.

### III.    Credit as True

Finally, the Court considers whether, crediting the improperly discredited evidence as true, the ALJ would be required to find Plaintiff disabled. Under the rejected testimony discussed above, Plaintiff would miss more than four days of work per month and require twenty-minute breaks every hour. The vocational expert testified that needing a twenty-minute break every hour rules out any available jobs in the national economy. Tr. 77. Accordingly, when the discredited evidence is credited as true, the ALJ would be required to find Plaintiff disabled.

Considering the record as a whole, the Court finds no reason for serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels*, 874 F.3d at 668 n.8 (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). Because Plaintiff has satisfied the credit-as-true standard, the Court exercises its discretion to remand this case for an award of benefits.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED: January 4, 2024            .

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

16 – OPINION & ORDER